MoKiNNEY, J.,
delivered the opinion of the court.
This was an action of trover, brought in the circuit court of Davidson, by Hamlet, as trustee in a certain deed of trust made by Clinton L. Freeman, to the defendant in error, George D. Hamlet, on the 13th day of March, 1852, for the benefit of William McMurray, against Isaac M. Jones, plaintiff in error, as deputy sheriff of said county, for the seizure and conversion of two slaves, Harriet and Henry, conveyed in said deed of trust.
On the trial, at the May term, 1854, the jury found for the plaintiff, and assessed the damages at $900: and a new trial having been refused, judgment was rendered upon the verdict; to reverse which, an appeal in error has been prosecuted to this, court.
It appears from proof, that two notes, purporting to have been made by Clinton L. Freeman and William McMurray, payable to William Allen: the first for $150, dated the 16th of March, 1851, due at four months; and the second for $200, dated 1st May, 1851, at six *258 months; were sold in the market by said Allen, and purchased by Samuel S. Bell, who afterwards brought suit thereon before a justice, and obtained judgments on the 8th of March, 1852, against Ereeman and McMur-ray, jointly.
Five days after said judgments were rendered,, to wit: on the 13th day of March, Ereeman made a deed of trust, by which, among other property, he conveyed to Hamlet, as trustee, the slaves Harriet and Henry, the subject matter of the present suit. McMurray was present when the deed was made, and caused it to be registered on the day of its execution. The deed recited, that McMurray had become liable, as the surety of Freeman, on divers notes, amounting to about $3500; that upon some of said notes judgments had been obtained against them jointly, and executions thereon were then in the hands of officers for about $1200. Some of the notes are particularly described in the deed, but as to others, it is stated, that the maker of the deed was unable to give a “full description.”
The intention, however, is explicitly declared to embrace all outstanding notes for which McMurray had become liable, as surety of Freeman. The two notes above mentioned, purchased by Bell, are admitted to be embraced by the deed.
The deed provides, that upon the failure of Freeman to pay and satisfy said notes and judgments, on or before the 17th day of April, 1852, the trustee should proceed to sell the slaves and other personal property described in the deed, after ten day’s notice, for cash, “and apply the proceeds to the satisfaction of said judgments, and such of said notes as may be due; and hold *259 the balance, if any, in his hands, to meet the remainder of said notes as they may respectively fall due.” The concluding clause of the deed provides, that “the balance of the proceeds of said slaves and other property above described, after the payment of all said notes and judgments, (after deducting the costs incident to the execution of this deed -of trust) jpay over to me.”
After the execution of this deed of trust, namely, on the 32nd day of March, 1853, Bell caused executions to issue on the two judgments before mentioned, and placed them in the hands of Jones, the plaintiff in error, who, on the same day, by virtue thereof, levied upon •said slaves Harriet and Henry, .as the property of Freeman.
It further appears, that on the 19th day of the same month, March, 1852, Bell obtained another judgment before a justice of the peace, against Freeman alone, for $150 48. And on the 33d of March he caused an ex •ecution to issue on said judgment; and at the same time sued out an attachment against Freeman, as an absconding debtor, founded on a note for $200. This attachment, with the foregoing execution issued on the same day, were likewise levied npon said slaves, Harriet and Henry, as the property of Freeman.
Jones, it appears, proceeded to sell said slaves, and this .action was brought by the trustee to recover their value.
■ On the trial of the cause, the defendant introduced, and read as evidence, the copy .of a bill in equity filed by McMurray against Bell, on the 3rd of May, 1853, seeking an injunction and relief against said two judgments recovered on .the 8th of March, 1852, as before *260 stated: first, upon the ground that the signature of the complainant, McMurray, to said notes was forged; and secondly, upon the ground of usury. Whether or not this suit was prosecuted, or any step taken therein subsequent to the filing of the bill, does not appear from the record before us. It is very clear, however, from the allegations of the bill, which need not here be noticed, that McMurray had no claim to relief in equity against his liability to Bell upon said notes, which had been previously fixed at law.
But on the trial of the case under consideration, it was argued for the defendant, Jones, and the same argument has been repeated here, that inasmuch as the deed of trust was made for the indemnity of McMurray, and not to secure the debts to Bell, his denial of his liability upon the notes to which, as he alleges, his signatures were forged, ought to be held to vitiate and avoid the deed of trust, upon the ground that he cannot repudiate the debt or avoid his liability, against which he has been indemnified, and still hold to the security; and thus deprive Bell of any remedy either against himself, or against the property of Freeman.
With reference to this position, the circuit judge instructed the jury, “that if Freeman forged McMurray’s name without his knowledge or consent, and afterwards made the deed of trust to secure the notes upon which the name of McMurray had thus been forged; the fact that McMurray repudiated the notes was not sufficient of itself to avoid the deed of trust. That the danger in which a party is involved of being unable to prove a forgery when sued, is a risk that may be legally insured against by a deed of trust; and a party thus cir- *261 eumstaneed is not driven to Ms election, either to surrender his rights under the deed of trust, or to assume the debt upon which his name has been forged.”
TMs instruction is incorrect, but yet its error cannot possibly have operated to the prejudice of the defendant, Jones. The error is, in assuming that McMurray, after accepting a deed of trust to indemnify him (among other tMngs) against his liability to Jones upon the two judgments previously rendered, on the notes to wMch his name was forged, could afterwards controvert such liability. It was held by this court, ■ in a similar case, Fitzpatrick vs. School Commissioners, 7 Humph., 224, that as a promissory note, (and of this character we must take it, from the record, were the notes held by Bell in the present case,) might be ratified by parol, without re-execution or re-delivery, and the acceptance of a deed of trust' by the parties whose names had been forged as sureties to the note, for their indemnification was such a ratification or acknowledgement of their liability, as made the note binding upon them.
Hpon this principle, which we think correct, it follows, that McMurray’s liability being conclusively fixed, he could not be deprived of his security until discharged of his liability, unless other objections existed to its validity.
This view of the case is decisive against the plaintiff in error. It might, however, be presented in other aspects, which would lead to the same result.
The deed of trust is not to be construed as merely for the indemnity of McMurray, as argued by the counsel for the plaintiff in error: It is likewise by the plain terms of the deed, a security for all the debts for which *262 McMurray had become hable: and Bell, or any other-creditor provided for in the deed, could have compelled the trustee to have appropriated the proceeds of the property to the satisfaction of his debt, even in the event of McMurray’s discharge from liability.
In this view, the trustee had the right, and it was his duty to protect the property, and hold it subject to the trusts declared in the deed, and his neglect to do so- would have been a palpable violation of his obligations to the several other creditors to whose benefit the deed equally enured with Bell.
We think there is no ground for impeaching the deed as fraudulent in law. We cannot assume that the debts specified in the deed, as due to Cheatham and J7. C. Bell, were not secured by McMurray; nor can we assume that the deed falsely recites, that McMurray is liable for certain debts for which, in fact, he is not liable: Neither can we assert, from any thing in the record, that the amount of property conveyed is more than sufi ficient to secure the several debts provided for. Under such circumstances, we are of opinion, that the provision contained in the deed, that after discharging all the debts specified, and the costs of executing the trust, the balance of the proceeds, if any, should be paid over to Freeman, does not, in law, vitiate the deed. This provision confers upon the maker of the deed no right or benefit that he would not have possessed as fully without it. As between himself and the trustee, he had the undoubted right to receive any balance that might remain after the trust was fully executed: True, he could not do so to the prejudice of other creditors, not provided for in the deed; but we are not at liberty, from *263 any thing on the face of this deed, to conclude that there were any other creditors; and if the fact were otherwise, we could not presume that this provision was made with the fraudulent design of appropriating the surplus for his own benefit, against the rights of his other creditors. See Austin vs. Johnson, 7 Humph., 191.
Judgment affirmed.